UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

QUIANNA SHARI MATTHEWS,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

19-CV-6296
DECISION & ORDER

---

On April 23, 2019, the plaintiff, Quianna Shari Matthews, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled by her multiple sclerosis ("MS") until February 2018. Docket Item 1. On September 17, 2019, Matthews moved for judgment on the pleadings, Docket Item 9; on January 13, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 15; and on February 3, 2020, Matthews replied, Docket Item 16.

For the reasons stated below, this Court grants Matthews's motion in part and denies the Commissioner's cross-motion.[1]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

### I.     ALLEGATIONS

Matthews argues that the ALJ erred in three ways. Docket Item 9. She first argues that the ALJ erred in determining her disability onset date. *Id.* at 14-19. She next argues that the ALJ erred in finding that she did not meet the specific listing criteria for multiple sclerosis. *Id.* at 19-24. And she finally argues that the ALJ improperly determined her residual functional capacity ("RFC"). *Id.* at 24-26. This Court agrees that the ALJ's determination of Matthews's disability onset date is not supported by

substantial evidence.  Because that error was to Matthews's prejudice, the Court remands the matter to the Commissioner.

## II.    ANALYSIS

Social Security Ruling 18-01p governs the determination of disability onset dates and is binding on the Commissioner.  *Determining the Established Onset Date (EOD) in Disability Claims*, Soc. Sec. Ruling ("SSR") 18-01p, 2018 WL 4945639 (S.S.A. Oct. 2, 2018);[2] *see also* 20 C.F.R. § 402.35 ("Social Security Rulings . . . are binding on all components of the Social Security Administration.").  The ruling distinguishes between disabilities of traumatic origin and those of non-traumatic origin.  The parties agree that Matthews's disability is non-traumatic.  *See* Docket Item 9 at 14-15; Docket Item 15 at 14.  More specifically, Matthews's disability is an "[e]xacerbating and remitting impairment[ ],"—that is, an "impairment[ ] that diminish[es] and intensif[ies] in severity over time, such as multiple sclerosis."  SSR 18-01p, 2018 WL 4945639, at *5.

To determine the onset date of an exacerbating and remitting impairment, an ALJ "take[s] into account the date the claimant alleged that his or her disability began" and "consider[s] . . . the nature of the claimant's impairment; the severity of the signs, symptoms, and laboratory findings; the longitudinal history and treatment course (or lack thereof); the length of the impairment's exacerbations and remissions, if applicable; and any statement by the claimant about new or worsening signs, symptoms, and laboratory findings."  *Id.* at *6.  The onset date "may predate the claimant's earliest

---

[2] Rulings 18-01p and 18-02p replaced the former ruling 83-20 on October 2, 2018, before the ALJ rendered his decision in this case.  Ruling 18-01p provides that "[f]ederal courts will review . . . [the Commissioner's] final decisions using the rules that were in effect at the time [the Commissioner] issued the decisions."  *Id.* at *7.

recorded medical examination or the date of the claimant's earliest medical records."

*Id.*

"An arbitrary onset date selection will not be accepted by a reviewing court."

*Ahisar v. Comm'r of Soc. Sec.*, 2015 WL 5719710, at *8 (E.D.N.Y. Sept. 29, 2015).

> [C]ourts have held tha[t] an ALJ may not rely on the first date of diagnosis as the onset date simply because an earlier diagnosis date is unavailable. Similar results obtain where an ALJ adopts some other equally arbitrary onset date, such as the date on which the claimant applied for SSI benefits, received a consultative examination, or appeared before an ALJ at an administrative hearing.

*McCall v. Astrue,* 2008 WL 5378121, at *18 (S.D.N.Y. Dec.23, 2008) (citations and footnote omitted). "While [ruling 18-01p] does not mandate that an advisor be called in all cases, '[c]ourts have found it 'essential' for the [ALJ] to consult a medical advisor' where the 'claimant does not have contemporaneous medical evidence from the period around his alleged disability onset date; the record is ambiguous with respect to onset date; and claimant's disability onset date must therefore be inferred.'" *Ahisar*, 2015 WL 5719710, at *9 (quoting *Cataneo,* 2013 WL 1122626, at *16) (citing SSR 18-83-20) (additional citation omitted). Remand is appropriate "when the ALJ's determination of disability onset date is not otherwise supported by substantial evidence." *Id.* (citations mitted).

Here, the ALJ found that Matthews became disabled on February 1, 2018—more than two years after Matthews's alleged onset date of December 31, 2015, and roughly seven years after Matthew's MS diagnosis in 2011. *See* Docket Item 7-2 at 12-21; Docket Item 7-10 at 18. That determination not only is arbitrary and unsupported by the record, it also is inconsistent with the weight of the evidence, including Matthews's

4

documented history of work absences, the opinion of internist Harbinder Toor, M.D., treatment notes, and Matthews's testimony.

Matthews's former employer submitted a letter explaining that between September 2017 and June 2018, Mathews "was not able to make it to [18] scheduled shifts due to a medical condition."  Docket Item 7-6 at 70.  Although the ALJ was correct in observing that most of these absences occurred after February 1, 2018, *see* Docket Item 7-2 at 16-17, this Court fails to see why the October 2017, November 2017, and two January 2018 absences were materially different from the ones that followed—that is, why the first four absences do not fit into the pattern of absences. Stated another way, the ALJ gave no reason for choosing the precise date of February 1, 2018, as opposed to any other date during the course of the absences that began in 2017.

Nor did the ALJ provide an adequate explanation for excluding the time from September through January, instead merely noting that "the bulk of the absences beg[an] at the end of January 2018 through the end of June 2018."  Docket Item 7-2 at 18.  As a factual matter that is true, but the overall trend of absences every few weeks started in October.  What is more, prior to holding the position she held in 2017-2018, Matthews had been terminated by the City of Rochester School District in 2015 because of her health issues.  *See* Docket Item 7-2 at 42-43.  The ALJ did not explain why that termination did not support Matthews's alleged onset date.  In short, relying on the employer's letter (and even then only on select parts of that letter) to demarcate Matthews's disability onset was error and resulted in an arbitrary onset date.

Medical evidence in the record also supports Matthews's alleged onset date.  For example, Dr. Toor examined Matthews in November 2016—eleven months after the

5

alleged onset date and fifteen months before the onset date found by the ALJ.  *See* Docket Item 7-7 at 128-32.  During that exam, Matthews had difficulty changing into a gown, getting out of a chair and onto the examination table, squatting, and walking heel-to-toe.  *Id.* at 129.  She also had "[t]ingling, numbness, and burning type pain in [both her] legs," and her "[h]and and finger dexterity [was] not intact in [either] hand[ ]."  *Id.* at 131.  Based on these observations and Matthews's reported medical history, Dr. Toor opined that Matthews had "moderate limitation[s]" standing, walking, sitting, bending, lifting, and carrying objects and "mild to moderate limitation[s]" reaching.  Docket Item 7-7 at 131.  He also opined that Matthews's "difficulty with balance," "fatigue," "pain," and "headaches" "interfere[d] with her routine."  *Id.*

Treatment notes from multiple providers support Dr. Toor's conclusion.  For example, Matthews was hospitalized and treated with steroids for an MS flare in February 2016.  *See* Docket Item 7-7 at 17.  A few months later, in May 2016, Matthews was treated at the University of Rochester Neuro Medicine Pain Management Center when she experienced "sharp, burning, throbbing, shooting, stabbing, cramping, and radiating" pain that "often interfere[d] with . . . work, . . . household chores, . . . yard work, . . . shopping, socializing with friends, exercising or recreation, . . . sexual relations, sleeping, [and] family relationships."  Docket Item 7-10 at 4.  Shirley Rast, M.S., F.N.P.-B.C., prescribed an anticonvulsant, an opioid, and an antidepressant.  *Id.* at 8.  That treatment plan was altered after it caused vision changes, edema, tingling, and headaches.  *Id.* at 20.  And Mathews was again hospitalized for an MS flare in September 2016.  *See* Docket Item 7-7 at 84.

6

Matthews's extensive treatment history shows a continuous process of trial and error, resulting in temporary relief but rarely eliminating her severe pain. For example, in January 2017, her treating neurologist, John D. Markman, M.D., noted that Matthews "ha[d] not been able to tolerate multiple classes of oral opioid analgesic medications as well as transdermal preparations. She remain[ed] on [the anticonvulsant] with partial reduction in pain intensity, but overall her symptoms [were] poorly controlled . . . . In light of the severity of [Matthews's] pain, her ongoing activity limitation and the underlying mechanism [MS]," Dr. Markman prescribed a potent opioid. Docket Item 7-10 at 30. Three months later, in April 2017, Dr. Markman noted that Matthews "describe[d] burning discomfort in the posterior cervical region" and "fe[lt] 'too lightheaded and sleepy'" to continue the recently-prescribed opioid . . . . She [was] working on a part-time basis but [was] limited by presenteeism [difficulty functioning in the workplace setting] due to her worsened pain intensity." *Id.* at 35. Dr. Markman prescribed morphine, *id.* at 36, which Matthews said was effective but caused daytime drowsiness, *id.* at 38. In December 2017, Matthews reported intense back pain: "I feel like a knife is in my back." *Id.* at 41. Dr. Markman again updated her treatment plan. *Id.* And all that happened before the ALJ's disability onset date.

The ALJ's onset date also does not comport with Matthews's testimony about the severity of her disability, but instead relies myopically on Matthews's ability to maintain some employment. More specifically, the ALJ found that Matthews was not disabled because of her ability "to continue working throughout most of the relevant period, as well as care for her two children and attend their activities." *See* Docket Item 7-2 at 15. That conclusion not only mischaracterized the record, but it also failed to acknowledge

that Matthews had "good" and "bad" days.  And with respect to Matthews's having continued to work, her termination and numerous absences, discussed above, undermine the finding that this work activity demonstrated that she was not disabled.

Moreover, the ALJ failed to address whether Matthews's work occurred under "special conditions," which would put the work activity outside the scope of substantial gainful employment.  *See* 20 C.F.R. § 404.1573(c)(2) ("If [a claimant's] work is done under special conditions, [the Commissioner] may find that it does not show that [the claimant has] the ability to do substantial gainful activity . . . . Examples of the special conditions that may relate to [a claimant's] impairment include . . . situations in which . . . [the claimant was] allowed to work irregular hours or take frequent rest periods.").  The vocational expert testified at the hearing that being permitted to miss more than two days of work per month would constitute such a special condition.  Docket Item 7-2 at 59.  The ALJ neither addressed this testimony nor considered the relevance of Matthews's having previously been terminated from a position in which she had not been provided those same accommodations.

The ALJ also ignored Matthews's lengthy testimony about the pain that working caused her.  *See, e.g.*, *id.* at 60 ("[The school nurse] was aware of my . . . MS.  So, she would say, you know what, you probably should go home, and even when I would object, she would tell them like she really should go home, because I've gone to work and I couldn't hardly write."); *id.* at 70 ("I have a horrible time sleeping.  I do.  I actually take medicine to help me sleep.").  That Matthews felt compelled to work through this pain in order to provide for her children appears to be a testament to her ability to withstand pain, not an indictment of her claim that she was disabled.  *See e.g.,* Docket

8

Item 7-2 at 72 ("I've gotten to the point where I try to live with it, because I don't have a choice, and so I push myself through it."); *see also id.* at 74 ("I have to [get through the day] in order to provide for the girls and to try to keep a roof over their heads.").

The same is true of Matthews's statements that she sometimes was able to attend her children's extracurricular activities. She testified, for example, that because the antibody infusions made it difficult for her to work the next day, she scheduled them on Fridays so as not to miss work. But as a consequence, it was difficult to drive her daughters to their sports practices. *See id.* at 63-64. That Matthews, a single mother, does what she can to support her daughters, notwithstanding intense pain, hardly defeats her claim of disability. As she explained during the hearing: "I try not to go to the emergency room. I'm not going to lie. Because I try to—my girls are at the age where I know they're depending on me, and especially with them going to sports and those kinds of things. I try to—but once I get home, it's like a whole different [me], because can't really . . . do anything. Once I get home from work or just a day period, I've made it so that there's things that we can—the girls can make themselves basically." *Id.* at 72-73. And contrary to the ALJ's characterization of Matthews's being able to handle the household chores, she testified that her daughters did the laundry, prepared their own meals, and did many other tasks around the house. *See id.* at 65.

The Commissioner argues that the ALJ properly based his onset determination on the medical source statement provided by Matthews's treating physician, Karen Nead, M.D. In September 2018, Dr. Nead opined that Matthews had been unable to sustain full-time employment beginning in "early 2018." *See* Docket Item 7-10 at 54. She explained that this determination was based on her having treating Matthews

9

approximately one to four times annually for "years." *Id.* at 50. Dr. Nead reported that Matthews had "chronic mid- and low-back pain," "recurrent migraine headaches," and "decreased sensation on left side." *Id.* Based on those conditions, Dr. Nead opined that Matthews could sit for two hours at one time and stand for 20 minutes at one time. *Id.* at 51. She could stand and walk for a total of less then two hours in one day and sit for six hours in one day. *Id.* at 52. And Matthews likely would miss two days of work per month due to her condition. *Id.* at 53.

Dr. Nead's opinion is entitled to controlling weight so long as it is "well-supported [*sic*] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). Nevertheless, the ALJ's reliance on Dr. Nead's opinion in this instance—and for the specific purpose of establishing Matthews's disability onset date—is not supported by the record. As Matthews points out, Dr. Nead did not treat Matthews between early January 2017 and February 2018. Dr. Nead's opinion that Matthews was unable to work beginning in early 2018 therefore does not imply that she could work in 2017; indeed, Dr. Nead had no way of knowing that. Therefore, relying on Dr. Nead's approximation of "early 2018" as the disability onset date is arbitrary at best—that is, based on the arbitrary date that Dr. Nead happened to treat and evaluate Matthews. And even then, "early 2018" does not explain why the ALJ chose February 1, 2018—as opposed to any other date in the first few months of 2018—as the specific onset date.

Worse yet, relying on Dr. Nead's "early 2018" date ignores significant evidence of disability during the year when Dr. Nead did not treat Matthews. Matthews experienced

a flare of her MS in late January 2017, *see* Docket Item 7-10 at 29; was diagnosed with an enhanced lesion in late January 2017, Docket Item 7-7 at 167; and in June 2017 began receiving antibody infusions that caused painful side effects, *see, e.g.*, *id.* at 142. So the medical evidence provides good reason to believe that Matthews was suffering from the same ailments that led to Dr. Nead's diagnosis during the year before Dr. Nead's exam.

In light of the extensive evidence that Matthews's MS was debilitating before February 2018, as well as the ALJ's failure to support the chosen onset date with substantial evidence, this Court concludes that the ALJ arbitrarily selected an onset date and accordingly remands to the Commissioner for reconsideration of Matthews's claim. The Court "will not reach the remaining issues raised by [Matthews] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made."). But on remand, the ALJ should note that because MS—not unlike some mental health conditions—results in cycles of flare ups, "[c]ycles of improvement and debilitating symptoms . . . are a common occurrence, . . . [and so] it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is [not disabled]." *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (third alteration in original) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)). As such, the ALJ's conclusory explanation that Matthews did not meet the

listing criteria for MS because "her symptoms and functioning can vary from day to day" does not constitute substantial evidence for denying her claim.  *See* Docket Item 7-2 at 15.  Similarly, the ALJ should consider and explicitly address the impact of Matthews's response to stress on her ability to work.  *See Stadler v. Barnhart*, 464 F.Supp.2d 183, 189 (W.D.N.Y. 2006) (citing SSR 85-15, 1985 WL 56857 (Jan. 1, 1985); *Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y. 1996)) ("Because stress is 'highly individualized,'" the ALJ must "make specific findings about the nature of [the claimant's] stress, the circumstances that trigger it, and how those factors affect [her] ability to work.").

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 15, is DENIED, and Matthews's motion for judgment on the pleadings, Docket Item 9, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: June 8, 2020
        Buffalo, New York

          */s/ Hon. Lawrence J. Vilardo*
          LAWRENCE J. VILARDO
          UNITED STATES DISTRICT JUDGE